**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

SUPERIOR WILDERNESS ACTION NETWORK,

Plaintiff,

v.

UNITED STATES FOREST SERVICE; JAMES SANDERS, Forest Supervisor; and ROBERT JACOBS, Regional Forester,

Defendants.

Civil No. 01-676 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER**

---

Leigh Ann Haynie, HAYNIE LAW OFFICE, 1009 Kidder Road, Carencro, LA 70520, for plaintiff.

Mary Trippler, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for defendants.

Plaintiff Superior Wilderness Action Network ("SWAN") is suing the United States Forest Service and two of its employees (collectively, "Forest Service" or "Service") alleging violations of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4332 *et seq*. This matter is now before the Court on the parties' cross-motions for summary judgment.

FILED 3·31·03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. 3·31·03
DEPUTY CLERK ______

## BACKGROUND

This dispute centers on a planned land exchange within the Superior National Forest between the Forest Service and Cook County, Minnesota. Under the plan, the Forest Service will give to the county 5.5 acres of federally-owned land along the Gunflint Trail. This parcel, a former resort, is known as the "Tip of the Trail." The parcel is located on Saganaga Lake, 60 miles northwest of Grand Marais, Minnesota. Saganaga Lake is an entry point to the Boundary Waters Canoe Area Wilderness ("BWCAW"), but motorized boat use is permitted on much of the lake. Tip of the Trail is surrounded by county and privately-owned lands. The Forest Service acquired Tip of the Trail in 1985 pursuant to the Boundary Waters Canoe Area Act, Pub. L. No. 95-495, 92 Stat. 1649 (1978). This law required the Service to purchase resort properties on certain lakes for fair market value if the private owners so requested. In the past, this land was granted a Special Use Permit and operated as an outfitting business. After the permit expired in 1996, the Forest Service used the land to house wilderness crews and volunteers. The Service has determined, however, that it is not cost-effective to use this facility for crew quarters. In exchange for Tip of the Trail, the Forest Service will receive 316.47 acres of land within the BWCAW that is owned by Cook County.

As part of the NEPA process, the Forest Service prepared an Environmental Assessment ("EA") of the land exchange. This process began with a public meeting in 1998. The EA was released in March 2000, and in January 2001 the Service issued a Decision Notice and Finding of No Significant Impact ("FONSI"). With the FONSI, the Service concluded that NEPA's requirements were satisfied and that an Environmental Impact Statement ("EIS") was not required. Besides considering the environmental

impacts of the Tip of the Trail exchange, the EA also evaluated an exchange involving Cook County lands and a parcel known as Hungry Jack. In early 2001, the Forest Service decided not to proceed with the Hungry Jack exchange, but it did proceed with Tip of the Trail.

On February 14, 2001, SWAN filed a notice of administrative appeal of the Decision Notice and FONSI, alleging that the EA violated NEPA, did not contain an adequate range of alternatives, and other issues. This appeal went through administrative process and was denied. SWAN now brings the case to this Court.

**ANALYSIS**

The parties' cross-motions address the same substantive issues and arguments, and therefore the Court addresses them together.

SWAN argues that the Forest Service's decision to proceed with the Tip of the Trail exchange is arbitrary and capricious and therefore violates NEPA. Specifically, SWAN alleges that: (1) the EA did not consider the cumulative impacts of the Tip of the Trail exchange, and the Service should conduct an EIS for all exchanges done along the Gunflint Trail; (2) the Forest Service violated NEPA by using one EA for both the Tip of the Trail and Hungry Jack exchanges, and because the Tip of the Trail exchange does not fit the "purpose and need" of the joint EA; and (3) the exchange would violate the Federal Lands Policy Management Act ("FLPMA"), 43 U.S.C. §§ 1761, *et seq.*, and other statutes governing federal land exchanges.

## I. Summary Judgment Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## II. Standard of Review Under the Administrative Procedures Act

The Court reviews the Forest Service's decision to approve a land exchange under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq*. The Court must accord substantial deference to the Forest Service's interpretation of the laws and regulations governing land exchanges. *Central So. Dakota Cooperative Grazing Dist. v. Secretary of the USDA*, 266 F.3d 889, 894 (8th Cir. 2001). The Service's action must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* (quotation marks and citation omitted). The Court must not substitute its own judgment for that of the agency. *Id.* at 895. "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Automobile Ins.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 158 (1962)).

## III. Supplements to the Record

SWAN includes four exhibits with its motion for summary judgment, including: the Forest Service's letter and newspaper notice seeking comments on the exchanges, SWAN's comments on the exchanges, and an affidavit from SWAN's executive director attesting to SWAN's potential injury by this action. On March 21, 2002, the Magistrate Judge denied SWAN's motion to conduct discovery for the purposes of supplementing the record. The Forest Service claims that these exhibits are now an attempt to get around the Magistrate Judge's order.

It is settled that judicial review of an agency decision must generally be limited to the administrative record. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Newton County Wildlife Ass'n v. Rogers*, 141 F.2d 803, 807 (8th Cir. 1998); *Earth Protector, Inc. v. Jacobs*, 993 F. Supp. 701, 707 (D. Minn. 1998). The Court finds that the record in this case is quite complete and will not be enhanced by SWAN's proposed submissions. Moreover, SWAN's comments and objections are already referenced in the EA and elsewhere in the Administrative Record.

SWAN argues that its exhibits should be permitted because they are designed to show standing. SWAN's standing, however, has not been challenged. Therefore, the Court finds that SWAN has made no showing why these documents should be admitted at this late date, and will therefore strike SWAN's Exhibits A, B, C, and D.

## IV. NEPA

### A. Comprehensive EIS

SWAN contends that the Tip of the Trail exchange must be viewed in the context of what it claims is a comprehensive program of land exchanges designed to rid Cook County of all its land holdings within the BWCAW. Accordingly, SWAN alleges that the Tip of the Trail exchange violates NEPA because the Forest Service did not perform an EIS on this comprehensive program. The Forest Service argues that a programmatic EIS is not needed, because no comprehensive program of land exchanges has been proposed.

The land exchanges are governed by the Forest Plan, a document used to manage the forest under the National Forest Management Act, 16 U.S.C. §§ 1600 *et seq.* The

Forest Plan for the Superior National Forest was implemented in 1986 after being subject to a full EIS. The Forest Plan does not grant blanket authorization for land exchanges, but it does envision site-specific exchanges for which individual environmental reviews will be prepared. Tip of the Trail is one such exchange. The Forest Plan specifically identified the Cook County lands at issue in this case as a top priority for federal acquisition, and the Forest Service went forward with the exchange after preparing an EA. (AR, Tab 2 ("Decision Notice") at 5; AR, Tab 1 ("EA") at 5.) *See Western Land Exchange v. Dombeck*, 47 F. Supp. 2d 1196, 1213 (D. Or. 1999) (giving an example of specific projects performed under a Forest Plan).

The question here is whether the Tip of the Trail exchange is truly an independent action, or is part of a broader program of exchanges. The Forest Service argues that Tip of the Trail is an individual exchange undertaken for its own purposes and on its own merits – to rid the Forest Service of commercially developed land for which it has no cost-effective use. SWAN alleges that Tip of the Trail is part of a larger program of exchanges. However, beyond vague suggestions of political pressure, SWAN gives no evidence that any proposal for such a program exists. Even if the Forest Service contemplated such a comprehensive program, the EIS requirement would still not be triggered because the Forest Service has not proposed such a plan. *See Kleppe v. Sierra Club*, 427 U.S. 390 (1976) (holding that an agency need not prepare an EIS for actions that are not proposed, but merely contemplated). SWAN notably does not argue that the Hungry Jack or other exchanges besides Tip of the Trail constitute "proposals for correlated actions that will have cumulative or synergistic impact" upon the region. *Id.*, 427 U.S. at 410. Because SWAN has provided no evidence that a "proposal" exists that

could be the subject of a comprehensive EIS, the Court finds that no EIS is required, and SWAN's contentions in this regard fail to establish a genuine issue of material fact.

### B. "Purpose and Need"

SWAN also contends that the Tip of the Trail exchange does not fit the stated "purpose and need" of the Hungry Jack/Tip of the Trail EA (the "joint EA"). It is undisputed that the purpose and need of the joint EA is to: (1) consolidate National Forest ownership within the BWCAW; (2) allow for more efficient forest management; and (3) protect wilderness values. (EA at 4.) SWAN concedes that the Tip of the Trail exchange will consolidate National Forest ownership, but argues that the Forest Service had not demonstrated that it will fulfill the other two purposes.

SWAN argues that the joint EA focused primarily on Hungry Jack, and that Tip of the Trail is so distinct that it merits a separate EA. SWAN points particularly to a chart that identified Hungry Jack and several other resort properties as possible subjects of exchange. (*See* AR at Tab 9.) SWAN contends that the failure to include Tip of the Trail on that chart and to evaluate it under those criteria shows that the EA did not adequately study Tip of the Trail on its own.

Forest Service regulations govern when separate actions can or must be considered together in the same environmental assessment. *See* 40 C.F.R. § 1508.25. This regulation differentiates between "connected," "cumulative," and "similar" actions.[1]

---

[1] This regulation provides in relevant part:

> To determine the scope of environmental impact statements, agencies shall consider 3 types of actions, 3 types of alternatives, and 3 types of impacts. They include:

(Footnote continued on next page.)

SWAN contends that because the Hungry Jack and Tip of the Trial exchanges are not "connected," they never should have been joined in the same EA. The Forest Service does not claim that Hungry Jack and Tip of the Trail are connected, but rather that they are "similar" under the regulations, and therefore **may** be combined.

SWAN's argument misinterprets the relevant regulation. The regulations provide that the Forest Service may join similar actions in the same impact statement if similarities "such as common timing or geography" make a joint EA "the best way to assess . . . the combined impacts of [these] similar actions . . . ." 40 C.F.R.

---

(Footnote continued.)

> (a) Actions (other than unconnected single actions) which may be:
>
> (1) Connected actions, which means that they are closely related and therefore should be discussed in the same impact statement. Actions are connected if they:
>
> (i) Automatically trigger other actions which may require environmental impact statements.
>
> (ii) Cannot or will not proceed unless other actions are taken previously or simultaneously.
>
> (iii) Are interdependent parts of a larger action and depend on the larger action for their justification.
>
> (2) Cumulative actions, which when viewed with other proposed actions have cumulatively significant impacts and should therefore be discussed in the same impact statement.
>
> (3) Similar actions, which when viewed with other reasonably foreseeable or proposed agency actions, have similarities that provide a basis for evaluating their environmental consequences together, such as common timing or geography. An agency may wish to analyze these actions in the same impact statement. It should do so when the best way to assess adequately the combined impacts of similar actions or reasonable alternatives to such actions is to treat them in a single impact statement.

40 C.F.R. § 1508.25.

§ 1508.25(a)(3). Thus, actions may be joined in the same EA even if they are not connected. In fact, the weight of authority supports combining similar federal actions in the same environmental assessment, and frowns upon unreasonably "segmenting" similar actions. *See, e.g., Save Barton Creek Ass'n v. Federal Highway Admin.*, 950 F.2d 1129, 1139-40 (5th Cir. 1992); *Fund for Animals v. Clark*, 27 F. Supp. 2d 8, 13 (D.D.C. 1998). In fact, one circuit has held that even similar actions **must** be considered within the same environmental impact statement. *See Northwest Resource Information Ctr., Inc. v. National Marine Fisheries Serv.*, 56 F.3d 1060, 1067 (9th Cir. 1995).

Here, the Forest Service states that the exchanges had similar timing, environmental consequences, and shared a similar purpose and need. SWAN points out differences between Hungry Jack and Tip of the Trail, but does not present sufficient evidence to show that the Forest Service's determination that they are "similar" was arbitrary and capricious. *See Clairton Sportsmen's Club v. Pennsylvania Turnpike Comm.*, 882 F. Supp. 455, 476 (W.D. Pa. 1995) (noting that determination of whether actions are similar is "committed to agency discretion"). Therefore, SWAN's allegations in this regard also fail.

## V. FLPMA

SWAN also argues that the Tip of the Trail exchange violates FLPMA's criteria for when exchanges of federal land are permissible. These criteria include factors such as protection of wildlife habitat, protection of cultural resources, consolidation of lands, improving management efficiency, and accommodating existing or planned uses. 36 C.F.R. § 254.3(b)(1). The regulations also require that the interests to be acquired "must

equal or exceed the resource values and the public objectives served by the Federal lands to be conveyed," and that the intended use of the land to be conveyed will not conflict with the management objectives on adjacent federal lands. 36 C.F.R. § 254.2(b)(2)(i)-(ii). The Forest Service's consideration of these factors is called its "public interest assessment."

In conducting this assessment for Tip of the Trail, the Forest Service determined that wetlands in federal ownership will increase. The Service also found that potential habitat for endangered and threatened species will increase while none will be lost, and that several types of administrative costs will be saved. (Decision Notice at 6.) The Service also determined that the intended use of the conveyed land – commercial or residential development – will not substantially conflict with the management of adjacent lands, since Tip of the Trail had been used similarly in the past. (*Id.*)

SWAN argues that this determination ignores potential harm to wilderness values from the exchange, because "adjacent federal land is wilderness area and Saganaga Lake is an entry point into that wilderness area." (Pl. Br. at 17.) The record does not support this argument. The record shows that Tip of the Trail is actually surrounded by privately owned property. (EA at 4.) SWAN's contention that Tip of the Trail sits on an entry lake to the BWCAW also appears to misrepresent the nature of this parcel. Although Saganaga Lake is an entry point to the BWCAW, the record shows that the lake has large areas of motorized use. (EA at 4.) SWAN's only contention of environmental harm rests upon the fact that Tip of the Trail sits upon this lake, but SWAN fails to show why this fact alone will damage wilderness values. Finally, SWAN does not explain how the land exchange will alter the character of this parcel. The record shows that Tip of the Trail is

developed land, and has historically been used for the commercial purposes. (Decision Notice at 5.)

SWAN also contends that the Forest Service formerly had a policy of resisting exchanges of land along the Gunflint Trail, and that Tip of the Trail represents a politically-generated shift away from this policy. Indeed, if the Service's interpretation of relevant regulations here conflicted with its earlier interpretations, the agency's decisions would be entitled to "considerably less deference than a consistently held view." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 447 n.30 (1987) (internal quotation marks and citation omitted); *National Wildlife Fed. v. Gorsuch*, 693 F.2d 156, 167 & n.31 (D.C. Cir. 1982). However, beyond further unsubstantiated allegations of back-room political dealings, SWAN has not produced evidence that the Tip of the Trail exchange represents any new "policy," nor that the Forest Service's management policies for the Gunflint Trail have changed. To the contrary, the Service has shown that the Tip of the Trail exchange was undertaken consistent with established federal policies of eliminating unneeded developed land while at the same time bringing more BWCAW land under federal ownership. The wisdom of these policies is not at issue here; SWAN must demonstrate that Forest Service's actions were arbitrary and capricious. Although its briefs are replete with allegations, SWAN has not provided evidence that the Service failed to comply with FLPMA or its regulations. Therefore, the Court finds that SWAN's claims under FLPMA fail.[2]

[2] SWAN also takes issue with the Forest Service's use of appraisals for the Tip of the Trail parcel. Appraisals conducted earlier in the EA process combined both Tip of the Trail and Hungry Jack. SWAN argues that Tip of the Trail should receive its own appraisal. The record

(Footnote continued on next page.)

Because the Court finds that none of SWAN's allegations raise a genuine issue of material fact, the Court is compelled to grant the Forest Service's motion for summary judgment and to deny SWAN's motion for summary judgment.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Exhibits A, B, C, and D to plaintiff's motion for summary judgment [Docket No. 21] are **STRICKEN**.

2. Defendants' motion for summary judgment [Docket No. 21] is **GRANTED**.

3. Plaintiff's motion for summary judgment [Docket No. 25] is **DENIED**.

4. Plaintiff's Complaint is **DISMISSED** with prejudice [Docket No. 1].

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2003
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

(Footnote continued.)
shows that a separate appraisal encompassing only the Tip of the Trail parcel was conducted on July 13, 2001. (*See* Docket No. 12.) Therefore, the Court finds that this contention is moot.

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

**CIVIL NOTICE**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

Modified 03/26/02